UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
PAMELA JEAN WOODIE,           )
                              )
              Plaintiff,      )
                              )       CIVIL ACTION
         v.                   )       NO. 15-CV-11666-WGY
                              )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social Security, )
                              )
              Defendant.      )
_____)
```

YOUNG, D.J.

June 2, 2016

**MEMORANDUM & ORDER**

**I.   INTRODUCTION**

This is an action by Pamela J. Woodie ("Woodie") appealing the final decision of the Acting Commissioner of Social Security (the "Commissioner") determining that she is not disabled and therefore not entitled to Social Security disability benefits. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

**A.   Procedural Posture**

On December 9, 2011, Woodie filed a Title II application for disability insurance benefits, alleging that her disability began on November 22, 2011.  Administrative R. ("Admin. R.") 90-

91, ECF No. 9.[1]  The claim was denied on April 18, 2012, and upon reconsideration, was denied again on September 28, 2012.  Id. at 90, 105.  Woodie then filed a written request for a hearing, which was held on October 22, 2013, before an Administrative Law Judge (the "hearing officer").[2]  Id. at 17, 36.

The hearing officer denied Woodie's claim for benefits, in a written decision issued on November 27, 2013.  Id. at 28-29. On January 7, 2014, Woodie filed a request to have the hearing officer's decision reviewed by the Appeals Council.  Id. at 13. At that time, Woodie supplemented her medical record with additional medical information from treating physicians.  See id. at 2, 13.  The hearing officer's decision was upheld by the Appeals Council on February 18, 2015.[3]  Id. at 1-3.

On April 22, 2015, Woodie filed a complaint seeking this Court's review of the Commissioner's decision pursuant to

---

[1] The record of the administrative proceedings in this case is split across several docket entries, labeled 9-1 through 9-10.  For the sake of clarity, this memorandum will cite to page numbers in the continuously paginated record as a whole rather than to individual docket entries that correspond to parts of the record.

[2] For an explanation of the Court's use of the term "hearing officer," see Vega v. Colvin, No. CV 14-13900-WGY, 2016 WL 865221 at *1 n.1 (D. Mass. Mar. 2, 2016).

[3] The Appeals Council ruled that the additional medical evidence did not create a reasonable probability that the hearing officer's decision would have been different.  See Admin. R. 2.

Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Compl., ECF No. 1.  The Commissioner filed the Administrative Record on July 13, 2015.  Admin. R.  In the following months, both parties filed motions -- Woodie, to reverse; the Commissioner, to affirm -- and accompanying memoranda.  <u>See</u> Pl.'s Mot. Reverse Decision Comm'r, ECF No. 13; Pl.'s Mem. Supp. Mot. Reverse Decision Comm'r ("Pl.'s Mem."), ECF No. 14; Mot. Order Affirming Decision Comm'r, ECF No. 18; Mem. Law Supp. Def.'s Mot. Affirm Comm'r. Decision ("Def.'s Mem."), ECF No. 19; Pl.'s Reply Def.'s Mot. Affirm Decision Comm'r ("Pl.'s Reply"), ECF No. 20.

### B.   Factual Background

As Woodie challenges only the hearing officer's step-five determination, <u>see</u> Pl.'s Mem. 9, this section recounts only the background facts, as provided by Woodie's testimony, and a brief overview of Woodie's medical records.  As the testimony of the vocational expert ("VE") who was called in this case is directly relevant to Woodie's claims, it is discussed <u>infra</u> Part IV.

### 1.   Woodie's Testimony

Woodie was born on July 28, 1966.  Admin. R. 41.  On August 21, 2009, Woodie was diagnosed with Multiple Sclerosis ("MS"). <u>Id.</u> at 465.  She has also been diagnosed with Lyme disease, which has made symptoms of MS, such as fatigue, especially difficult to manage.  <u>Id.</u>  Woodie uses a cane to help her walk

and balance.  Id. at 51.  She has issues with anxiety, migraine headaches, and sleeplessness.  Id.  Woodie described having difficulties when lifting or gripping objects: "I can't lift a gallon of milk . . . [i]f I lift the keys up and stuff they will fall out of my hands at times."  Id. at 63.

Prior to November 21, 2011, when Woodie stopped working, she had been employed as an auto parts deliverer, secretary, receptionist, and cashier.  Id. at 27, 200.  She lives with her two daughters, who are in middle school and high school.  Id. at 57, 65.  They are generally responsible for completing household chores and preparing meals.  Id. at 58-59.  Woodie performs only a minimal amount of driving, and has "somebody that takes me to all my appointments[.]"  Id. at 60.  Her time is generally spent on her computer, watching television, or reading a magazine, but her activities vary depending on her symptoms.  Id. at 61.

### 2.  Medical Records and Opinions

Woodie submitted medical reports and treatment records dating back to January 2009, when she first began complaining of headaches.  Admin. R. 309-525.  The Social Security Administration ("SSA") obtained Woodie's physical and mental Residual Functioning Capacity ("RFC") assessments from the Massachusetts Disability Determination Services office.  Id. at 90, 105.

[4]

The medical records describe Woodie's headaches, which initially were thought to be "migraine headaches with aura and tension-type headaches," id. at 301.  Subsequent testing revealed the presence of three brain lesions.  Id. at 270-271. After being diagnosed with MS, Woodie began treatment for mood and anxiety disorders, which were interpreted as psychological consequence of her MS diagnosis.  Id. at 593.  In July 2012, after experiencing severe aching, fatigue, and flu-like symptoms, Woodie took a blood test, which confirmed that Woodie had contracted Lyme Disease.  Id. at 557, 564-566.

## II.  The Hearing Officer's Decision

The hearing officer found that Woodie "met the insured status requirements of the Social Security Act on December 31, 2012" and did not engage in any substantial gainful activity after the alleged onset date in November 2011.  Id. at 19-20. He then found that Woodie suffered from the severe impairments of multiple sclerosis, migraine headaches, anxiety disorder, and depressive disorder, and that "these impairments significantly affect [Woodie's] ability to perform basic work related functions."  Id. at 20.  After reviewing the Listing of Impairments found in 20 CFR Part 404, Subpart P, Appendix 1, the hearing officer concluded that Woodie did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Id.

In determining Woodie's residual functional capacity
("RFC"), the hearing officer stated that he considered "all
symptoms and the extent to which these symptoms can reasonably
be accepted as consistent with the objective medical evidence
and other evidence," id. at 22, which led the hearing officer to
define Woodie's RFC as follows:

> [Woodie] has the [RFC] to perform light work as
> defined in 20 CFR 404.1567(b) except [Woodie] cannot
> stand or walk more than 4 hours out of an 8-hour
> workday.  She cannot climb ladders or scaffolds, and
> she is only occasionally able to climb stairs and
> ramps, balance, stoop, crouch, kneel and crawl.  She
> is occasionally limited in her ability to perform
> gross manipulation with bilateral upper extremities.
> She must avoid constant exposure to unprotected
> heights; extremes of heat, humidity or cold; pulmonary
> irritants; and vibration.  She can follow simple 2-3
> step directions.  She is able to maintain
> concentration, persistence and pace in the performance
> of these tasks for two hour increments during an eight
> hour day over a forty hour workweek.  She can tolerate
> only minor changes in the workplace.

Id.  The hearing officer's decision then expounded on the weight
he afforded various medical opinions and testimony, concluding
that Woodie retained the capability to perform light work.  Id.
at 21-28.  With regard to his step-five determination, the
hearing officer stated:

> To determine the extent to which these limitations
> erode the unskilled light occupational base . . . I
> asked the vocational expert whether jobs existed in
> the national economy for an individual with the
> claimant's age, education, work experience, and
> residual functional capacity.  The vocational expert
> testified that given all of these factors the
> individual would have been able to perform the

requirements of representative occupations such as account clerk . . . telephone order clerk . . . [and] office helper . . . .

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, I conclude that . . . the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

Id. at 28.

## III. LEGAL STANDARDS

### A.    Standard of Review

Under 42 U.S.C. § 405(g), this Court has the power to affirm, modify, remand or reverse a decision of the Commissioner.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); see Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).  "[S]ubstantial evidence" is "more than a mere scintilla," and such evidence that "a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  As it is the role of the hearing officer to draw factual inferences, make credibility determinations, and resolve conflicts in the evidence, the Court must not perform

such tasks itself.  Irlanda Ortiz v. Sec'y of Health & Human
Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v.
Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir.
1981)).

The Court must uphold the Commissioner's determination
"even if the record arguably could justify a different
conclusion, so long as it is supported by substantial evidence."
Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3
(1st Cir. 1987) (citation omitted).  In other words, affirmance
is appropriate if a "reasonable mind, reviewing the record as a
whole, could accept it as adequate to support [the hearing
officer's] conclusion."  Monroe v. Barnhart, 471 F.Supp.2d 203,
211-12 (D. Mass. 2007) (quoting Lizotte v. Sec'y of Health and
Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)).  Legal
conclusions, however, are subject to de novo review.  Seavey v.
Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).

**B.  Social Security Disability Standard**

An individual is considered disabled if he is "[unable] to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months."  42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has promulgated a

[8]

five-step sequential analysis to determine whether a claimant is disabled:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her "residual functional capacity," education, work experience, and age, is unable to do any other work, the application is granted.

Seavey, 276 F.3d at 5 (citing 20 C.F.R. § 416.920).

The claimant bears the burden in the first four steps to show that he is disabled within the meaning of the Social Security Act; the burden then shifts to the Commissioner at step five of the inquiry to prove that the claimant is able to engage in substantial gainful activity that exists in significant numbers in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). Ordinarily, the hearing officer, in step five, will ask a VE whether a hypothetical person with the claimant's RFC, age, education, and work experience would be able to perform other work existing in the national economy. See Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

## IV.  ANALYSIS

The hearing officer found that Woodie's claim failed at
step five, as he determined that there were a number of jobs
available to Woodie in the regional and national economy that
she could perform.  Admin. R. 28.  Woodie's challenge to the
hearing officer's decision is confined to this step-five
determination.  See Pl.'s Mem. 9.  Specifically, Woodie alleges
that the hearing officer failed to provide a reasonable
explanation for the conflicts between the VE's testimony and the
Dictionary of Occupational Titles (the "Dictionary"), in
violation of Social Security Ruling ("SSR") 00-4p.  Id.  As a
result, Woodie argues, the hearing officer's conclusion is
unsupported by substantial evidence and requires reversal or
remand.  See id. at 11.[4]

The Commissioner acknowledges that the hearing officer
erred by failing to supply a reasonable explanation for why his
opinion cited jobs that required "'frequent' handling and
reaching" while Woodie's RFC restricts her to "light work with
only occasional gross manipulation."  Def.'s Mem. 10 (internal

---

[4] Woodie also claims that the hearing officer "failed . . .
to ask whether any conflict existed between the VE's testimony
and the [Dictionary]."  Pl.'s Mem. 9.  In fact, however, the
hearing officer explicitly asked the VE to identify any
conflicts between his testimony and the Dictionary, see Admin.
R. 71-72.  The VE failed to do so.

citation omitted).  The Commissioner argues, however, that the oversight was harmless, because the VE listed occupations available to Woodie in addition to those cited in the hearing officer's opinion.  Id. at 11-12.  Relying on the VE's testimony that Woodie could also work as a "greeter" or "surveillance system monitor," Admin. R. 77, the Commissioner argues that Woodie's RFC does not preclude her from performing these occupations, meaning a remand would only elicit the same result, Def.'s Mem. 9.  The Court discusses these two occupations in turn, ultimately concluding that, because it is far from clear that someone with Woodie's RFC would be able to perform these occupations as defined in the Dictionary, a remand is necessary for further factfinding by the hearing officer.

**A.   Greeter**

Although unmentioned in the hearing officer's decision, the VE testified that a person with Woodie's RFC[5] could work as a greeter, which, the VE asserted, has a Specific Vocational Preparation ("SVP")[6] code [of] [two]."  Admin R. 77.  The

---

[5] Technically, the VE's testimony regarding the greeter position was in response to an RFC that was more restrictive than Woodie's.  Compare Admin. R. 21-22 (RFC determination), with id. at 75-76 (second hypothetical).  The differences between the two, however, are immaterial.

[6] "Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker

Commissioner argues that this testimony constitutes "substantial evidence" in support of the hearing officer's determination, and renders harmless the error discussed above.  <u>See</u> Def.'s Mem. 11-12.

Woodie points out that the VE's testimony here was in conflict with the Dictionary, which classifies the position as requiring an SVP of four.  Pl.'s Reply 4.  Woodie is correct that the Dictionary requires an SVP of four for the greeter, or, as the Dictionary phrases it, "Information Clerk," position. <u>See</u> <u>Dictionary of Occupational Titles</u> ("DOT") § 237.367-022, 1991 WL 672188 (4th Ed. 1991).  Woodie also accurately points out the position's required level-four reasoning level, which, along with the SVP level of four, presents a potentially significant conflict with Woodie's RFC, which restricts her to "follow[ing] simple 2-3 step directions" and "tolerat[ing] only minor changes in the workplace," Admin. R. 22.  If it were "clear" that Woodie could perform the occupation of greeter, a remand would be unnecessary.  <u>See, e.g.</u>, <u>Finigan</u> v. <u>Burwell</u>, No. CV 15-12246-WGY, 2016 WL 2930905, at *7 (D. Mass. May 19, 2016) (quoting <u>Polanco-Quinones</u> v. <u>Astrue</u>, 477 Fed. Appx. 745, 746 (1st Cir. 2012)) (additional internal citation omitted)

---

situation." <u>Dictionary of Occupational Titles</u>, Appendix C § II, 1991 WL 688702 (4th ed. 1991).  The SVP scale runs from one ("[s]hort demonstration only") to ten ("[o]ver 10 years").  <u>Id.</u>

(alterations in original) (stating that "the Court is 'not usually permitted to affirm . . . on grounds other than those advanced by the agency [below],' unless 'it is clear what the agency's decision must be.'"). Here, however, due to the incongruity between Woodie's RFC and the demands of the job, it is not.

**B.    Surveillance System Monitor**

Similar to her testimony regarding the greeter position, the VE here testified that someone with an RFC similar to Woodie's "would . . . be able to work as a surveillance system monitor[,]" and that these positions exist in large numbers. Admin. R. 77.  The Commissioner suggests that Woodie can work as a surveillance system monitor" because the position does not require any reaching or handling.  Def.'s Mem 10.  Again, however, Woodie correctly identifies a fatal problem with the Commissioner's argument: this position's level-three reasoning requirements.  See Pl.'s Reply 4 (citing DOT § 379.367-010, 1991 WL 673244).

Level-three reasoning requires individuals to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables."  DOT, Appendix C - Components of the Definition Trailer § III, 1991 WL 688702. Woodie's restriction to "follow[ing] simple 2-3 step directions"

and "tolerat[ing] only minor changes in the workplace," Admin.
R. 22, is too restrictive for level-three reasoning.[7]  The Court
thus cannot affirm on this ground, especially absent any
discussion by the hearing officer, because it cannot hold as
matter of law that Woodie could perform this occupation.  Cf.,
e.g., Finigan, 2016 WL 2930905, at *7 (internal citations
omitted).

## V.   CONCLUSION

The VE's testimony does not constitute substantial evidence
that Woodie can perform a significant number of jobs that exist
in the economy, and the record as a whole does not otherwise
contain substantial evidence to support the hearing officer's
conclusion.  Therefore, for the reasons set forth above, the
Court **GRANTS** Woodie's motion, ECF No. 13, and **DENIES** the
Commissioner's motion to affirm, ECF No. 18.  The case is
remanded[8] to the hearing officer for further proceedings
consistent with this memorandum.

---

[7] It might, however, be conducive to a position requiring
level-two reasoning.  See Priest v. Colvin, No. 14-CV-01053-WGY,
2016 WL 2892058, at *5-*6 (N.D.N.Y. May 17, 2016) (affirming
hearing officer's finding that claimant could perform occupation
requiring level-two reasoning where claimant's RFC was
restricted to "performing simple, repetitive tasks in low[-
]stress occupations . . . [with] no more than occasional
decision-making required and no more than occasional changes in
the work setting").

[8] This is not "the unusual case in which the underlying
facts and law are such that the agency has no discretion to act

**SO ORDERED.**

                                        /s/ William G. Young
                                        WILLIAM G. YOUNG
                                        DISTRICT JUDGE

---

in any manner other than to award or deny benefits." Vega, 2016
WL 865221, at *11 (quoting Seavey v. Barnhart, 276 F.3d 1, 11
(1st Cir. 2001)).